## THORPE et al. v. WILLIAM FILENE'S SONS CO.

### No. 4265.

District Court, D. Massachusetts.
Sept. 3, 1931.

See, also, 40 F.(2d) 269.

Harold E. Cole, of Boston, Mass., for plaintiff.

Jacob J. Kaplan and Nutter, McClennen & Fish, all of Boston, Mass., and Hoguet & Neary and Daniel L. Morris, all of New York City, for defendant.

MORTON, District Judge.

This is an action at law for infringement of an expired patent. The patent sued on was granted to Gertrude Thorpe under date of October 8, 1912, on an application filed November 27, 1911. The defendant is manufacturing under a patent granted to Tim under date of May 13, 1913, on an application filed November 24, 1911.

The defenses are noninfringement, anticipation by Tim, and failure to mark the patented article, so that under Rev. St. § 4900 (35 USCA § 49) no damages are recoverable. The case was heard on oral and documentary evidence.

The article in question is a knitted or crocheted cap having an integral visor piece

in front and at the rear an integral muffler strap which folds up around the cap when not in use and can be turned down and the ends of it brought around the neck and fastened at the throat.

■ Several such caps had been patented before Mrs. Thorpe entered the field. The patents to Currie, Yudelson, and others which have been cited show clearly that the general idea on which Mrs. Thorpe's cap was based was old in the art. That she was unaware of this fact is, of course, inconsequential. The characteristic feature of her cap was not its shape or the arrangement of parts—it is doubtful if the cap had patentable novelty in those respects; it was the method of construction with the capacity for adjustment to the head thereby secured. Her underlying thought was that a cap of this character might be so loosely knitted or crocheted that buttons could be pushed through the fabric at any point, that buttonholes would be unnecessary, and that the cap in whichever form it might be used could, therefore, be easily and accurately fitted to the head of the wearer. This was stated by the applicant in clear language in her communication to the Examiner under date January 9, 1912, and is apparent from the specifications, "a head covering which is preferably crocheted," i. e., to give openings through which buttons could be passed. Page 1, lines 11, 12. "A further object is to provide a head covering of this character in which buttons are provided and adapted to button through the material of the head covering without providing button holes of any sort," etc. Page 1, lines 21–28. "The buttons 4 are projected through the meshes of the knitted or crocheted material of the flap." Page 1, lines 51–53. See to the same effect specifications page 1, lines 59–66, 74–78. "It will be noted that with my improved crocheted or knitted head-covering, no button holes are provided for the buttons, and the buttons are projected through any portion of the material. This is of great advantage, because it allows the head covering to tightly or loosely engage the head or throat to suit the wearer, and it will fit any head, and it will therefore allow the user a wide range of variation in the wearing of the head covering." Page 1, lines 79–89. On no other interpretation of the plaintiff's patent is there any distinction between it and the patent to Tim which was in the office at the same time.

■■ The claims are, of course, to be construed in the light of these specifications. In claim 1 the expression, "adapted to be projected through the knitted Flaps," is a direct reference to page 1 lines 51, 52, 59, 60, 72, 73, 82, 83, in each of which places the words "projected through" are used. This claim clearly relates to a material so loosely constructed that the buttons can be "projected through" it at any desired point. This was explicitly stated by the applicant to the Patent Office. "This claim is drawn to a device including a head covering flaps and buttons on the flaps adapted to be projected through *any portion of the knitted flaps.* [Italics in original.] By this construction the device may be adjusted to fit any size head." Applicant's letter to Patent Office dated May 15, 1912. A material requiring buttonholes is not within this claim. The defendant's cap is made of closely knitted material and does require buttonholes for the fastenings. It does not, therefore, infringe this claim.

The second claim does not contain the word "projected;" it says "buttoned through." Line 12. It is apparently directed to the advantage which the patentee's loose material gives in providing a simple and practical way in which muffler flaps of a cap —which were old in the art—could, when not in use, be held in place under the front flap, thereby making the cap more sightly. So construed the claim is not infringed by the defendant's cap.

If this is not what this claim means, and it is in fact directed to the point that the muffler flaps when not in use are retained between the front flaps and the body of the cap, then also the defendant's cap does not infringe. I doubt whether such a slight change over Currie involves patentable invention (British patent to Currie, No. 2079 of year 1892), but it is unnecessary to decide this point.

For these reasons, I am of opinion that the defendant's cap did not infringe either claim of the plaintiff's patent, and that the bill must be dismissed.

■ In view of the possibility of appeal and of another court taking a different view on the question of infringement, I should perhaps say that, while the plaintiff as a witness made a distinctly favorable impression upon me, and I believe that she meant to tell the truth, and the testimony of Tim showed clear indications of being affected by his interest in the outcome of the litigation, I doubt whether the evidence for the plaintiff taken as a whole justifies granting her priority of invention over Tim, whose application was

first in the Patent Office. Tim's cap is shown in the Butler Catalogue of 1912. The date when this catalogue was prepared is not in evidence, but was probably in 1911. Some time must necessarily have elapsed between the first invention by Tim of his cap and his getting it on the market in this catalogue. Mrs. Thorpe testifies that she made her first cap in January or February, 1911. This statement is not corroborated and rests on pure recollection. She further says that she sold one to Mrs. Wm. Hogg in August, 1911; and this statement is corroborated by the vendee. No documentary corroboration is offered, however; this testimony as to date also rests on pure recollection. I believe that the witnesses are testifying honestly, but, even so, there are great possibilities of error in fixing dates so long past by mere recollection. Tim testifies that he invented his cap in 1909 or 1910 and put it on the market in 1911. His testimony as to the exact date of his invention is rather vague, as one would expect it to be, and he is not corroborated until we come to the Butler Catalogue; but I think that catalogue with its necessary implications of antecedent development so far supports what he says; that, if Mrs. Thorpe's invention be regarded as the same as his, I do not think her priority over him has been established.

Judgment for the defendant, with costs.